UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RUSSELL HEWITT                          CIVIL ACTION NO. 13-cv-2404

VERSUS                                  JUDGE FOOTE

MARCUS BEDFORD, ET AL                   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Russell Hewitt ("Plaintiff") was housed as a pretrial detainee at the Caddo Correctional Center. Medical staff directed that Plaintiff be housed on the first floor because he complained of a back injury. Plaintiff alleged in his complaint that deputies nonetheless ordered him to move to a second-floor cell and, a few days later, Plaintiff was injured when his back and leg gave out and he fell on the stairs. He named as defendants Commander Robert Wyche and deputies John Carter, Marcus Bedford, and Billy Wright. All four defendants have filed a Motion for Summary Judgment (Doc. 46). For the reasons that follow, it is recommended the motion be granted.

### Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute

is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Summary Judgment Evidence**

Defendants support their motion with the certified copies of medical and jail records, video evidence, and detailed declarations of fact made pursuant to 28 U.S.C. § 1746.  Such declarations have been recognized as competent summary judgment evidence.  Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003).  Plaintiff, on the other hand, points only to his unverified complaint, his memorandum in opposition to the motion, an unsworn statement by a fellow inmate, and a document (Doc. 54) that is labeled as an affidavit but is not sworn before a notary or made in compliance with Section 1746.  Rule 56 allows consideration of affidavits or declarations in a summary judgment contest, but unsworn statements are not competent summary judgment evidence.  Okoye v. University of Texas Houston Health-Science Center, 245 F.3d 507, 515 (5th Cir. 2001).  Similarly, unsworn memoranda are not competent summary judgment evidence.  Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir.

1991).   The only competent summary judgment evidence in the record comes from Defendants, so it is that evidence that will control for purposes of resolving the motion.

Registered Nurse Sheila Wright offers a declaration regarding the medical care Plaintiff received at the jail.  It began with Plaintiff's intake screening in December 2012 when Plaintiff said that he had been treated at LSU Health-Sciences Center in August 2012 after a car accident that affected his back.  Plaintiff claimed that he had been hospitalized for one day.  Dr. Nelson, who provides medical care to inmates at the jail, prescribed ibuprofen and Flexeril, and he noted in the record that Plaintiff should be assigned to a lower bunk on a lower tier.

Jail officials did not have the medical records from LSU.  Those records show that Plaintiff was brought to the ER in September 2012 after another car rolled into the back of his car and caused minimal damage. The air bag did not deploy, and Plaintiff had no visible injury.  He reported moderate shoulder and back pain. Plaintiff was not hospitalized. Within a few hours, he reported feeling better and was ready to go home.  Physicians prescribed Motrin and Flexeril for back pain and told Plaintiff to return as needed.  There is no indication Plaintiff returned.

The events that led to this lawsuit began on February 13, 2013, about two months after Plaintiff entered the jail.  Deputies Billy Wright and John Carter offer similar declarations about what happened that day.  They state that they were told that an inmate needed to be moved to cell confinement, which required that he be housed alone and on the lower tier. Deputies preferred that, for safety precautions, such inmates be held in a cell that has a tray

hatch, which would reduce the need to open the cell door.  The deputies reviewed the status of the eight cells that fit the requirements and determined that all but one of them held two inmates who each had lower bunk assignments.  Plaintiff had a lower bunk assignment, but his cellmate, Johnny Madison, did not.  The deputies decided to use Plaintiff's cell for the cell confinement, and they asked Plaintiff and his cellmate to take their belongings and wait in the dayroom.  (It is implied that the cells at issue on the lower tier allowed both inmates to have a lower bunk, but the cells available upstairs did not.)

The only open cell for the two men was cell 64, which was on the second tier.  Deputy Wright states that he was aware Plaintiff had a lower bunk and lower tier assignment, so he asked Plaintiff about being moved to the second tier.  Wright states that Plaintiff replied that he wanted to stay with his "celly" and that he could go up the stairs.  Plaintiff said, "I'm a grown damn man.  I'm not going to hurt myself on purpose."  Deputy Carter recalls that Plaintiff volunteered to go upstairs to cell 64, and he recalled Deputy Wright asking Plaintiff if he was okay with the move.  Plaintiff responded, "Yeah."  The deputies state that they did not see Plaintiff experience any difficulty walking up the stairs, and Plaintiff never stated he was in pain or complained that he might get hurt if he moved upstairs.

Sgt. Marcus Bedford, who was the supervising officer, states that he does not recall anyone telling him that Plaintiff had a lower bunk and lower tier assignment, and he never previously heard Plaintiff complain of back pain or exhibit any difficulty walking.  Bedford states that if Plaintiff had told him he was in pain or could not go up stairs, he would have stopped the move and contacted a supervisor for guidance.

Earlier in the case, Plaintiff filed an amended complaint (Doc. 7) to which he attached an unsworn statement by his cellmate, Johnny Madison.  The statement, which is written in the same handwriting used to pen Plaintiff's pleadings, states that deputies Wright and Carter sat in the dayroom and discussed the fact that Plaintiff needed to be housed on a lower tier, and they told Sgt. Bedford about the issue.  Madison stated that the officers deliberated and decided to move both men upstairs.  He said that he saw Plaintiff tell different people on different shifts about his need, but Plaintiff was always met with a statement such as, "I didn't put you up here, I'm not moving you."  Madison said he watched Plaintiff struggle to get up and down the stairs until the day of his accident, February 17, 2013. Madison's statement was not sworn to before a notary or other authorized officer, and it was not made under penalty of perjury, so it is not competent summary judgment evidence.

Inmate Madison later provided Defendants a declaration that is sworn to pursuant to Section 1746.  That declaration is competent evidence, and Defendants have used it to support their motion.  Madison states in his admissible declaration that Plaintiff volunteered to be assigned upstairs because he did not want to be separated from Madison as his cellmate. Madison says he did not hear Plaintiff tell the deputies that he could not go up the stairs or that he was in any kind of pain or had trouble walking.  Madison states that Plaintiff walked up the stairs without apparent difficulty.

Madison states that, once inside cell number 64, Plaintiff told Madison, "I got those bitches.  They never should have moved me."  Plaintiff said, "I'm going to fall.  I'm going to wait five days."  Plaintiff explained that he would try to get $15,000 to $20,000 from the

sheriff for the fall, and he offered Madison $1,000 to $2,000 to stick to the story and say he saw Plaintiff fall.[1]  Madison states that Plaintiff told him on February 17 that he was going to wait for the other inmates to go to recreation, then he would go down the stairs and fall. Plaintiff asked Madison to tell the deputies that Madison saw Plaintiff fall.  Madison says that he actually saw Plaintiff grab the handrail of the stairs and then fall down without ever letting go of the handrail.  Madison admits that he told the deputies he saw Plaintiff fall.

Deputy Charles Middleton states in a declaration that he was working in the area at the time of the recreation period when an inmate told him that another inmate had fallen on the stairs.  Middleton found Plaintiff at the top of the stairs, sitting on his back and holding on to the rail.  Plaintiff told Middleton that his leg gave way, and he slipped on the stairs. Middleton used his radio to call for help.  Plaintiff was placed on a stretcher and taken to the medical area.  Middleton states that he wrote on an incident report that Plaintiff had fallen, but he clarifies that he did not actually see Plaintiff fall on the stairs.

Security video shows that Plaintiff approached the top of the single flight of stairs and paused for a couple of seconds. He then grabbed the handrail with his left hand and stepped onto the stairs.  It appears that Plaintiff immediately lost his footing and fell onto his backside.  He held onto the rail during the entire incident. It is not readily apparent from the

---

[1]Plaintiff represented in his complaint that he filed a prior federal action that was "settled in favor of Plaintiff."  Court records show that Plaintiff filed suit, while housed at another institution, about his lack of opportunity for exercise.  The suit was initially dismissed as frivolous but, after reversal by the Fifth Circuit, Plaintiff soon filed a voluntary motion to dismiss in which he stated that he had resolved his claims with the defendants.  See Hewitt v. Cooper, 06-cv-1697.

video whether or not the fall was staged.  Deputy Middleton arrived within seconds, and a stretcher and several additional personnel arrived soon afterward.

Nurse Wright testifies that Plaintiff was taken to LSU Health-Sciences Center.  The treating physician diagnosed low back pain and sciatica, and he prescribed ibuprofen, Flexeril, and an assignment to a lower tier and lower bunk.  Plaintiff was returned to the jail that same day.  Dr. Nelson noted in the jail medical records that Plaintiff was temporarily assigned to a lower tier and lower bunk until released by the physician.

Plaintiff is familiar with the grievance process, but there is no record that he complained about his reassignment until after the alleged fall.  Records show that, about five days after the alleged fall, Plaintiff's wife called and said that Plaintiff was having pain walking.  The medical staff provided a walker to Plaintiff and made his bunk and tier assignments permanent.  Three days later, Plaintiff complained of back pain and asked to see the doctor, and he was seen by the doctor that day.  Two days later, Plaintiff refused his medicine and complained that it made him hallucinate.

Between March 1, 2013 and May 16, 2014, Plaintiff was the recipient of frequent medical treatment at the jail.  He was prescribed ibuprofen or acetaminophen several times and examined by Dr. Nelson or other medical staff on several occasions.  The only requests by Plaintiff that were not promptly honored were a request to see a chiropractor paid for by his family and a request to see a back specialist.  Commander Wyche denied the first request because jail policy prohibited inmates from seeing private healthcare providers. Wyche responded to the request for a back specialist by stating that Plaintiff could see Dr. Nelson

and seek his referral to another physician.  Plaintiff made such a request, as well as a demand

for a referral for an MRI, but Dr. Nelson did not find that such referrals were needed.  He

prescribed ibuprofen for his diagnosis of sciatica.

**Analysis**

### A. Eighth Amendment

The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and

it is applicable to the states through the Fourteenth Amendment.  For a convicted prisoner

or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the

Eighth Amendment, he must prove that prison or jail officials were "deliberately indifferent"

to his "serious medical needs."  Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of

Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).  Deliberate indifference encompasses

only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.

Estelle, 97 S.Ct. at 291-92.

"Deliberate indifference is an extremely high standard to meet."  Domino v. The

Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  The prisoner must

show that officials refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for

a serious medical need.  Id., citing Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

### B. Deputies Wright and Carter

Deputies Wright and Carter have plainly met their summary judgment burden by

presenting detailed and competent evidence that shows that, at most, they may have been

negligent in directing that Plaintiff move upstairs despite his lower tier assignment.  A mere negligent act that causes unintended injury does not violate the constitution.  Daniels v. Williams, 106 S.Ct. 662 (1986) (affirming dismissal of inmate's claim that he slipped on a pillow negligently left on the stairs by a deputy); Andrews v. Belt, 274 Fed. Appx. 359, 360 (5th Cir. 2008) ("Andrews's assertion that the defendant may have known about the leaky toilet but failed to repair it at most alleges negligence, which is not actionable under § 1983").  Similarly, the mere failure to alleviate a significant risk that a jail official should have perceived, but did not, is insufficient to show deliberate indifference.  Domino, 239 F.3d at 756, citing Farmer v. Brennan, 114 S.Ct. 1970 (1994).

The evidence shows that the deputies did not make the decision lightly but did so only when required by space limitations and the medical assignments of others, and after asking Plaintiff if he was willing to make the move.  Even if the deputies should not have made the reassignment, and the administrative grievance process indicates that Commander Wyche disciplined them for the decision, their actions certainly were not deliberately indifferent to a serious medical need.  The evidence shows that they took into account Plaintiff's medical need and directed the move after being assured by Plaintiff that it would not cause him a medical problem.

### C. Sgt. Bedford

Sgt. Bedford has met his burden. There is no competent evidence to dispute his declaration that he was unaware Plaintiff had a lower bunk and lower tier assignment.

Neither is there evidence contrary to his statement that he never heard Plaintiff complain of back pain or exhibit any difficulty walking.

### D. Commander Wyche

Commander Wyche has also met his burden.  He states in a declaration that he was not aware of the move and became aware of the situation only after Plaintiff filed an administrative remedy request long after the fall.  Wyche issued a step-two response in which he apologized to Plaintiff and told him that the personnel involved would be disciplined. Wyche denied Plaintiff's request for monetary compensation.  Wyche, in his declaration, explained that he responded to Plaintiff's request for a back specialist by referring him to the jail physician, Dr. Nelson, who did not find that a specialist was needed.

An inmate does not have a protected liberty interest in having a grievance resolved to his satisfaction.  Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).  And supervisory officials are entitled to defer to the judgment of medical professionals.  See, e.g., Vasquez v. Dretke, 226 Fed. Appx. 338 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" when "they deferred to the judgment of medical professionals by denying [a prisoner] dentures"); Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates"); and Jones v. Livingston, 2005 WL 3618316, *3 (S.D. Tex. 2005) ("it would be reasonable for Warden Morales to refer the matter to, and rely on, the medical decisions of Dr. Herrera").  There is no evidence that Wyche could have

prevented the fall or that he responded with deliberate indifference to Plaintiff's health needs. Wyche is entitled to summary judgment.

**Conclusion**; **Three Strikes Rule**

The summary judgment evidence presented by Defendants satisfied their burdens of demonstrating the absence of a genuine dispute of material fact. The burden then shifted to Plaintiff to demonstrate such a dispute. Plaintiff has responded with nothing but his unsworn assertions; he offers no competent summary judgment evidence. Based on the competent evidence presented, a reasonable jury could never return a verdict for Plaintiff under the applicable law. Defendants are, therefore, entitled to summary judgment on all of Plaintiff's claims.

Plaintiff filed this suit in forma pauperis as allowed by 28 U.S.C. § 1915. The statute provides that "the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious." Section 1915(e)(2)(B)(I). "An allegation that the plaintiff knows to be false is malicious, and a complaint containing only such allegations is properly subject to dismissal under §1915(e)(2)." 98 Federal Procedure, L. Ed. §20:409, citing Horsey v. Asher, 741 F.2d 209, 212 (8th Cir.1984). There is compelling evidence that Plaintiff, having successfully settled one claim against corrections officials, faked his fall on the stairs, manufactured this claim, and attempted to pay a witness to offer false testimony to support the claim. That is a fraud on the court and an abuse of the privilege of being allowed to file without payment of a filing fee. It also makes this a malicious action that is subject to dismissal under the statute.

The significance of characterizing the dismissal as one under the statute is that a prisoner may not bring a civil action or appeal as a pauper if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a federal court that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).

The form complaint used by Plaintiff asked him to list prior federal suits.  Plaintiff mentioned the case that he settled, but he did not list another suit (in which he complained that his right to practice the Islamic faith was hindered while he was held in extended lockdown) that was dismissed as frivolous, as was an appeal.  Hewitt v. Henderson, 07-cv-0839 (Docs. 8 and 15).  Those dismissals gave Plaintiff two strikes under the three strikes rule of 28 U.S.C. § 1915.  Adepegba v. Hammons, 103 F.3d 383, 388 (5th Cir.1996) ("both the frivolous appeal and a lower court's dismissal as frivolous count" as strikes).  The recommended dismissal of this case as malicious will provide a third strike and bring to an end Plaintiff's taxpayer funded litigation practice.  For any future cases brought while Plaintiff is incarcerated, Plaintiff should have to pay the filing fee in full at the time of filing or show that he is under imminent danger of serious physical injury.

Accordingly,

**IT IS RECOMMENDED** that the Defendants' **Motion for Summary Judgment (Doc. 46)** be granted and that all claims against all Defendants be dismissed with prejudice as malicious under 28 U.S.C. § 1915(e).

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of October, 2014.

Mark L. Hornsby
U.S. Magistrate Judge